USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONTRACT TRANSPORT SERVICES,
INC. and WILLIAM MADACHIK,

                Plaintiffs,

-against-

NEW ERA LENDING LLC; COLLINS CASH,
INC. dba SMART BUSINESS FUNDING;
SMART BUSINESS FUNDING; DMKA LLC dba
THE SMARTER MERCHANT; MERCHANT
CASH AND CAPITAL LLC dba BIZFI FUNDING
dba BIZFI; PEARL BETA FUNDING, LLC dba
PEARL CAPITAL; BANKERS NETWORK
SERVICES, LLC; and KRISTOPHER SWEED,

                Defendants.

17 Civ. 8224 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On June 22, 2017, Plaintiffs, Contract Transport Services, Inc. ("CTS") and William Madachik, brought this action in the Northern District of Ohio against Defendants, New Era Lending LLC, Merchant Cash and Capital LLC d/b/a Bizfi Funding d/b/a Bizfi ("Bizfi"), Pearl Beta Funding, LLC d/b/a Pearl Capital ("Pearl Capital"), Bankers Network Services, LLC, Kristopher Sweed (collectively, "Moving Defendants"), Collins Cash, Inc. d/b/a Smart Business Funding, Smart Business Funding, and DMKA LLC d/b/a The Smarter Merchant.[1] Compl., ECF No. 1. On August 17, 2017, Plaintiffs filed an amended complaint (the "complaint"). Am. Compl., ECF No. 38. Plaintiffs bring claims for fraud, violations of Ohio and New York Usury laws and Deceptive Trade Practices Acts, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), 1964, via mail and wire fraud. *See* Am.

---

[1] On December 11, 2017, Plaintiffs voluntarily dismissed Defendant DMKA LLC d/b/a The Smarter Merchant, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. 75. Defendants Collins Cash, Inc. and Smart Business Funding have not appeared in this action to date, and thus, have not sought dismissal.

Compl. Defendants New Era Lending, LLC and Pearl Capital filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). New Era Mot., ECF No. 42. Defendants Banker Network Services, LLC and Kristopher Sweed also moved to dismiss on these grounds, Bankers Mot., ECF No. 46, as did Defendant Bizfi, Bizfi Mot., ECF No. 48.[2] On October 2, 2017, the Honorable Donald C. Nugent transferred the case to this Court. ECF No. 62. For the reasons stated below, the motions to dismiss are GRANTED.

## BACKGROUND

The following facts are taken from the complaint, which the Court accepts as true for purposes of this motion. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Plaintiff CTS is a passenger transportation company which entered into agreements with four of the Moving Defendants, which are merchant lenders that provided merchant loans or merchant cash advances to CTS.[3] Am. Compl. ¶¶ 70, 74, 82, 89, 95, 101, 107, 114, 121, 126. The agreements purported to be sales agreements for CTS' future accounts receivables (*i.e.*, cash advances in exchange for a percentage of CTS' proceeds from future sales), *id.* ¶¶ 52–53, and required a guarantor who would make payment if the future receivables were not sufficient to meet their expected value, *id.* ¶¶ 71, 75, 83, 90, 96, 102, 108, 115, 122, 127. Plaintiff Madachik is the guarantor of these agreements. *Id.*

Plaintiffs allege that the agreements are not, in actuality, sales agreements, but rather operate as loans, and are styled as sales agreements rather than loans in order to "evade usury laws." *Id.* ¶¶ 6, 53. Plaintiffs claim that Defendants deceived them "with misinformation on their websites and in electronic and oral communications," *id.* ¶ 17, and that the agreements charge

---

[2] The Court addresses these three motions to dismiss together, as they raise the same legal issues.
[3] Plaintiffs claim that Defendants Collins Cash, Inc. d/b/a Smart Business Funding and Smart Business Funding are "merchant lender[s] that provided merchant loans or merchant cash advances" to Plaintiff, Am. Compl. ¶ 2, but the complaint does not allege that CTS entered into any agreements or transactions with these Defendants. *See generally id.*

2

"interest in excess of Ohio and New York criminal usury amounts," and are "illegal contracts and are therefore unenforceable." *Id.* ¶¶ 18–19.

## DISCUSSION

I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II. Analysis

A. RICO Claim

First, Defendants argue that Plaintiffs fail to state a federal civil RICO claim under 18 U.S.C. § 1962. Defendants contend that this claim must be dismissed because Plaintiffs "(1) fail to allege a 'pattern' of racketeering activity, (2) fail to identify an 'enterprise' distinct from the Defendants themselves, and (3) make vague 'group allegations' that violate Rule 9(b)." New Era Mot. at 2; *see also* Bankers Mot. at 4; Bizfi Mot. at 8. The Court agrees.

RICO "sets forth four specific prohibitions aimed at different ways in which a pattern of racketeering activity may be used to infiltrate, control, or operate 'a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.'" *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097 (2016) (alteration in original) (quoting 18 U.S.C. § 1962).

> These prohibitions can be summarized as follows. Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Finally, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions.

*Id.* (footnote omitted). To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through either a pattern of racketeering activity or the collection of an unlawful debt. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989); *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (citation omitted). Although it is unclear under which subsection Plaintiffs bring their claims,[4] each of these elements must be sufficiently pleaded under §§ 1962(a)–(c). *See RJR Nabisco*, 136 S. Ct. at 2105 ("Each of RICO's substantive prohibitions requires proof of an enterprise that is 'engaged in, or the activities of which affect, interstate or foreign commerce.'" (citation omitted)); *H.J., Inc.*, 492 U.S. at 232 ("Each prohibited activity is defined in 18 U.S.C. § 1962 to include, as one necessary element, proof either of 'a pattern of racketeering activity' or of 'collection of an unlawful debt.'"). In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) (citation omitted).

---

[4] Plaintiffs' Sixth Cause of Action is titled as a claim under "18 U.S.C. §§ 1962(b), 1964" but also contains allegations that it is "unlawful to, through a 'pattern of racketeering activity' or 'collection of an unlawful debt', use any part of such income in the operation of any enterprise" pursuant to § 1962(a), Am. Compl. ¶ 271, and that it is unlawful "for any person who is 'employed by or associated with' to conduct or participate in such activities" under § 1962(c), *id.* ¶ 273.

4

Plaintiffs fail to state a plausible claim under any section of RICO, because they have not sufficiently alleged a predicate crime, the existence of an enterprise, and a pattern of activity or collection of unlawful debt.

1. Predicate Acts of Racketeering Activity

RICO defines "racketeering activity" as certain criminal acts under state and federal law, including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343. 18 U.S.C. § 1961(1); *see also Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996) (noting that "racketeering activity" includes "conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud"). Here, Plaintiffs' RICO allegations are based upon mail and wire fraud. *See* Am. Compl. ¶¶ 269–289. The Second Circuit has determined that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims predicated on fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Here, Plaintiffs claim that Defendants violated RICO by operating an "enterprise which collected unlawful debts," Am. Compl. ¶ 280, "conducted multiple acts of mail and wire fraud," *id.* ¶ 282, and "operated a scheme to defraud" by misrepresenting through advertising and documents that they provided loans rather than sales of future receivables, *id.* ¶¶ 283–285. These conclusory allegations are insufficient. Even taking Plaintiffs' purported underlying scheme to defraud as true and assuming that the mail and wire fraud furthered a larger scheme to defraud, Plaintiffs have not set forth, with adequate particularity, the specific circumstances of how the mail and wire fraud of each defendant advanced the larger fraudulent scheme. Plaintiffs have failed to identify which Defendant sent which particular mailings or wires as well as where and when the transmissions were made.

*See McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08 Civ. 392, 2009 WL 2132439, at *5 (E.D.N.Y. July 10, 2009) (dismissing RICO actions predicated on wire and mail fraud as the "[c]omplaint specifies no dates of any uses of the interstate mails or wires" and "[t]he complaint does not specify where any of these communications were made").

Indeed, vague statements such as "Defendants operated a scheme to defraud by misrepresenting through advertising, including on their websites and electronic and oral communication that they provided loans, when documents provide that in fact each transaction was a sale of future receivables"—without more—cannot survive a motion to dismiss. Am. Compl. ¶ 283. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (affirming dismissal because the allegedly fraudulent acts of which plaintiffs complained "were not pled with sufficient particularity"). The complaint does not "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin*, 962 F.2d at 191.

Nor have Plaintiffs sufficiently pleaded each Defendant's fraudulent intent. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). For example, Plaintiffs do not claim that Defendant Sweed had anything to do with the agreements at issue, but rather, allege only that he acted as a broker when Plaintiffs applied for the loans at issue. *See* Am. Compl. ¶ 48. Plaintiffs do not explain how he could have had any knowledge about the purported fraudulent scheme. *See Woods v. Gen. Motors Corp.*, No. 08 Civ. 5224, 2010 WL 3613812, at *6 (E.D.N.Y. Aug. 23, 2010) (plaintiffs failed to allege a RICO predicate act when they failed to "provide any specific factual allegations that support the different Defendants' intentional or knowing participation in the scheme"). Plaintiffs' blanket allegations that all members of the purported enterprise

collectively "conducted multiple acts of mail and wire fraud," Am. Compl. ¶ 282, do not "give rise to a strong inference of fraudulent intent." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999).

Plaintiffs, therefore, have not satisfied Rule 9(b)'s heightened pleading requirements for fraud claims. As such, Plaintiffs fail to adequately allege any RICO predicate crimes.

2. Existence of a RICO Enterprise

Even if a predicate crime had been alleged, the complaint does not sufficiently plead that Defendants were involved in a RICO enterprise. An "enterprise" is defined in 18 U.S.C. § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court has further explained that under RICO, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Plaintiffs state in a conclusory fashion that Defendants "acquired or maintained, through a pattern of racketeering activity or the collection of an unlawful debt, an interest or control of an enterprise," Am. Compl. ¶ 279, and "operated, maintained an interest in, and controlled an enterprise which collected unlawful debt," *id.* ¶ 280. Plaintiffs, however, fail to assert how each Defendant was in fact associated with the enterprise or how Defendants functioned as a unit.[5] *See Satinwood*, 385 F.3d at 174–75 (finding no enterprise where plaintiffs "failed to provide [the court] with any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact

---

[5] Plaintiffs also make additional conclusory and vague allegations that Defendants "operated a scheme to defraud by misrepresenting through advertising . . . that they provided loans," Am. Compl. ¶ 283, and "operated a scheme to defraud by misrepresenting through documents that each transaction was a sale of future receivables," *id.* ¶¶ 284–285.

7

enterprise . . . from which [the court] could fairly conclude that its members functioned as a unit" (internal quotation marks and citations omitted)); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (holding that plaintiff failed to sufficiently allege the "enterprise" element of the RICO claims as no allegations demonstrated how defendants "improperly functioned as a unit").

Moreover, Plaintiffs make no allegations to suggest that Defendants have ever met or communicated with each other. To survive a motion to dismiss, the allegations of an "enterprise" must be "more than the sum of the participants in a series of independent frauds." *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 452 (S.D.N.Y. 2007). It is not enough to include a "laundry list of the individuals and entities that were connected . . . and somehow involved in . . . alleged schemes." *Id.*; *see also Kochisarli v. Tenoso*, 02 Civ. 4320, 2006 WL 721509, at *7 (E.D.N.Y. Mar. 21, 2006) (holding that no enterprise was alleged where "a reader is unable to conceive of how these individuals are connected, worked together, or had any type of common purpose that would support a RICO claim"). Without claims that the alleged conspirators acted for the benefit of another conspirator or had relationships with one another, or that their actions were anything except "isolated and independent," an "enterprise" is not sufficiently pleaded. *Cedar Swamp*, 487 F. Supp. 2d at 451 (holding that there was no indication that the group of defendants was an "ongoing organization" as opposed to "an *ad hoc* collection of entities and individuals who each happened to have been involved in one scheme or another against [the plaintiff]").

Plaintiffs, therefore, fail to sufficiently plead the "enterprise" element of their RICO claim.

### 3. Pattern of Racketeering Activity

Even if an enterprise had been sufficiently pleaded, the complaint does not contain sufficient plausible allegations that there was a "pattern" of racketeering activity required for a RICO claim. A "pattern" requires continuity and a relationship. *H.J., Inc.*, 492 U.S. at 239 (plaintiff must show that

defendants' acts are "related, *and* that they amount to or pose a threat of continued criminal activity"). Plaintiffs do not plausibly allege either.

The continuity necessary to establish a pattern may be either "closed-ended" or "open-ended." *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 693 (S.D.N.Y. 2001). Open-ended continuity does not require a substantial temporal showing, but requires a plaintiff to show a threat of ongoing criminal activity beyond the period in which the predicate acts were committed. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Plaintiffs make no allegations of a "threat of continuing criminal activity" and the complaint contains no facts to support a finding that the purported acts will be repeated. As such, Plaintiffs have failed to allege that Defendants engaged in an open-ended "pattern of racketeering activity" under RICO. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (finding no open-ended continuity where "[t]here was no threat that the alleged fraud . . . would continue in the future").

Closed-ended continuity involves acts occurring over a "substantial" amount of time, which is typically two years in the Second Circuit, although this is not a bright line rule. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). The relevant time period is the "time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Id.* Because, as discussed, Plaintiffs fail to sufficiently allege predicate crimes, they also fail to allege that those purported crimes continued for the requisite amount of time. But even assuming that the crimes did occur, Plaintiffs fail to provide factual statements suggesting that they occurred over a "substantial period of time." *Cofacredit*, 187 F.3d at 242. The complaint only specifies when each agreement was entered into with each

9

Defendant, but not for how long the predicate activity occurred.[6] For this reason, the complaint does not sufficiently plead closed-ended continuity.

And, as discussed above, Plaintiffs do not sufficiently allege that the predicate acts took place—as such, the Court need not, and cannot, analyze whether the predicate acts are "related" to each other vertically and horizontally. *See H.J., Inc.*, 492 U.S. at 240 (predicate acts are "related" when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events" (citation omitted)).

          4. Collection of an Unlawful Debt

Plaintiffs effectively concede that they do not plead a pattern, arguing instead that they "need not show a pattern of racketeering activity to successfully obtain RICO damages . . . because [they] have provided a prima facie case for RICO damages based on collection of an unlawful debt." Pl. Opp. at 13, ECF No. 54.

---

[6] Even if the predicate acts did span two years, this "is insufficient, without more, to support a finding of a closed-ended pattern," as "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Satinwood*, 385 F.3d at 181. "[C]ourts in this Circuit have held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate close-ended continuity." *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009). Here, all of these factors weigh against a finding of closed-ended continuity, as Plaintiffs' RICO claim involves solely mail and wire fraud, a single set of victims (*i.e.*, Plaintiffs), and a discrete scheme with a narrow purpose of misrepresenting that "each transaction was a sale of future receivables" in order to collect unlawful debt. *See* Am. Compl. ¶¶ 279–285; *see also CPF Premium Funding, Inc. v. Ferrarini*, No. 95 Civ. 4621, 1997 WL 158361, at *9 (S.D.N.Y. Apr. 3, 1997) (finding thirty-five specific acts of misconduct carried out against the same victim did not constitute continuity as required under RICO). This does not state a claim under the civil RICO statute, under which "wrongdoers committing only widespread frauds or other major criminal offenses are subject to the statute's severe penalties." *Gross*, 628 F. Supp. 2d at 488.

To establish a civil RICO claim for unlawful debt[7] collection, a plaintiff must plausibly allege that: (1) the debt was unenforceable under state or federal usury laws; (2) the usurious rate was at least twice the enforceable interest rate; and (3) the debt was incurred in connection with the defendants' "business of lending money" at a usurious rate. *See Dae Hyuk Kwon v. Santander Consumer USA*, __ F. App'x __, 2018 WL 3546498, at *2 (2d Cir. July 24, 2018); *see also Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249 (2d Cir. 1985) (stating that a civil RICO claim based on collection of an unlawful debt must allege, *inter alia*, that "the debt was incurred in connection with 'the business of' usury"). RICO's legislative history, specifically discussing a usurious rate that was twice the enforceable rate, suggests that the "'[t]he target of [RICO] is . . . not sporadic activity,'" and that its application should be limited "to cases of clear 'loan-sharking.'" *Durante Bros.*, 755 F.2d at 250. The requirement that the loans be incurred in connection with "the business of" making usurious loans is aimed at the same goal, *i.e.*, "the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking." *Id.* "[T]he civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury." *Id.* at 248.

Here, the complaint states only that Defendants "operated, maintained an interest in, and controlled an enterprise which collected unlawful debt based on usurious interest rates and fees." Am. Compl. ¶ 280. The complaint, however, fails to specify any other individuals or companies to whom Defendants have lent money or the usurious interest rates attached to any other loans made by Defendants. There are no claims, therefore, to support the conclusory allegation that Defendants

---

[7] Unlawful debt is defined in relevant part as a debt which was "incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

11

were "in the business of lending money at a usurious rate." *See Durante*, 755 F.2d at 250 ("The complaint gives no promise that [plaintiff] will be able to establish that [defendants] were engaged in 'the business of' making usurious transactions. Its allegation of 'a scheme' or business was equivocal, and it contained no indication that defendants had engaged in any usurious dealing other than that described in the complaint.").

Accordingly, Plaintiff's RICO claim (Sixth Cause of Action) is DISMISSED with prejudice.

### B. State Law Claims

Plaintiffs also assert state law claims for fraud, criminal usury, usury, and deceptive trade practices. Am. Compl. ¶ 180–268. Having dismissed Plaintiffs' federal law claim, the Court declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c). *See Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, Plaintiffs' claims under Ohio and New York laws for fraud, criminal usury, usury, and deceptive trade practices (First, Second, Third, Fourth, and Fifth Causes of Action) are DISMISSED without prejudice to renewal in state court.

### C. Subject Matter Jurisdiction

Because the Court has dismissed the only claim over which it had original jurisdiction, and declined to exercise supplemental jurisdiction over the remaining state law claims, the Court does not reach Defendants' alternative argument that the complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606, 2009 WL 856637, at *6 n.1 (S.D.N.Y. Mar. 25, 2009) (declining

to reach defendants' motion to dismiss for lack of subject matter jurisdiction after granting motion under Rule 12(b)(6)).

D. Remaining Defendants

Although Defendants Collins Cash, Inc. d/b/a Smart Business Funding and Smart Business Funding (collectively, "Smart Business") have not appeared in this case and did not file motions to dismiss, the Court *sua sponte* dismisses the claims against them as well.

Because Plaintiffs' claims against Smart Business suffer from the same deficiencies as those brought against the other defendants, the Court treats the instant motions to dismiss as if they were brought on behalf of all defendants. *See Virtual Dates, Inc. v. Afternic.com, Inc.*, No. 01 Civ. 4023, 2001 WL 1646451, at *2 (S.D.N.Y. Dec. 20, 2001) (dismissing claims against defendant who did not join in other defendants' motion to dismiss because "precisely the same points control the claims against it"); *see also Le Bouteiller v. Bank of New York Mellon*, No. 14 Civ. 6013, 2015 WL 5334269, at *11 n.6 (S.D.N.Y. Sept. 11, 2015) (dismissing *sua sponte* the claims against non-moving defendant for failure to state a claim where "the rulings in this opinion would apply with equal force to [that defendant]").

Moreover, the complaint makes no substantive allegations against Smart Business, except that "[e]mail communications related to New Era Lending transactions[] sometimes involved individuals working for Smart Business Funding," Am. Compl. ¶ 132, and that "an alternate name used by Smart Business Funding is Collins Cash, Inc," *id.* ¶ 133. *See Reyes v. City of New York*, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" (alteration in original) (citation omitted)). Accordingly, all claims against Smart Business are DISMISSED.

## CONCLUSION

For the reasons stated above, Moving Defendants' motions to dismiss are GRANTED with respect to Plaintiffs' RICO claim. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, those claims are DISMISSED without prejudice to renewal in state court. Additionally, all claims against Collins Cash, Inc. d/b/a Smart Business Funding and Smart Business Funding are DISMISSED with prejudice.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: October 26, 2018
New York, New York

_____
ANALISA TORRES
United States District Judge